IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIAN DEAN HEDLIN,<br><br>   Petitioner,<br> v.<br><br>GREG LEWIS, Warden,<br><br>   Respondent. | **Case No. 12-03560 RS**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Petitioner Brian Hedlin seeks federal habeas corpus relief following his state conviction of first degree murder (Pen. Code, § 187),[1] attempted murder (§§ 187, 664), false imprisonment (§ 236), and first degree burglary (§ 460(a)).  He asserts three separate claims related to the trial court's jury instructions, one claim of prosecutorial misconduct, and one claim that the trial court improperly denied his motion for severance.  For the reasons stated herein, the petition for relief is denied.

---

[1] All subsequent statutory references are to the California Penal Code unless otherwise specified.

## II. FACTUAL BACKGROUND[2]

Petitioner and his brother, Shawn,[3] were each convicted of first degree murder and related crimes following an early morning confrontation on January 31, 2005. On that night, Brian's girlfriend and the mother of his child, Veronica Moreira, drove Brian and Shawn to the San Francisco apartment of Eduardo Zaparolli and Gregorio Chicas. Zaparolli, Chicas, and their girlfriends Nelia Lopez and Jeanette Briones awoke to loud banging on the front door. When Chicas opened the door, the two Hedlin brothers began asking "Where is [Zaparolli]?" Briones testified that Chicas and the Hedlins began to argue, and she then heard a gunshot. She ran out of the bedroom and saw Chicas lying on the living room floor. The brothers then demanded Briones tell them where to find Zaparolli. When she screamed, they then shot her in the face, causing her to lose consciousness. An autopsy later revealed that Chicas was shot twice, once in the left shoulder and once in the forehead. Stippling around his forehead wound indicated the barrel of the gun was no more than two feet away from Chicas when it was fired.

Lopez testified the brothers proceeded to kick open Zaparolli's bedroom door. She saw Shawn, holding a gun in his right hand, lunge for Zaparolli. When Zaparolli tried to wrestle the gun away, Shawn shot him in the back. Brian kicked Zaparolli in the head and shouted to his brother, "Shoot him, shoot him, shoot him, finish him off." As Zaparolli lay on the ground, Shawn aimed his gun and again shot Zaparolli. Zaparolli testified he then heard Shawn and Brian laughing as Shawn positioned himself over Zaparolli and pointed the gun in Zaparolli's face. With the gun apparently out of bullets, Zaparolli escaped. Lopez eventually fled through a window. The brothers then returned to Moreira's car and left the scene.

Police officers arrived on the scene at approximately 3:10 a.m. They found Chicas dead in a pool of blood, and Briones mumbling and moaning in the hallway. The officers had difficulty

---

[2] The following facts are taken as true from the California Court of Appeal's unpublished decision, *People v. Hedlin*, Case Nos. A122793, A123172, 2010 WL 5384268 (Dec. 29, 2010).

[3] Petitioner and his brother are referenced here by their first names where necessary for clarity.

understanding Briones, but testified that she clearly responded "Shawn" when asked "who did this?" Zaparolli was initially uncooperative, but he eventually identified Shawn as carrying the gun.

Brian was arrested at his job at approximately 8:30 a.m. the same morning. His blood alcohol level shortly thereafter was found to be 0.12. A forensic toxicologist testified that Brian's blood alcohol level would have been between 0.20 and 0.22 at the time of the shooting, a level that impairs both judgment and sensory input. Shawn was arrested later that morning on his way to the bus depot in San Francisco.

Shawn and Brian were tried together. Moreira, testifying under a grant of immunity, stated that after she heard gunshots and screaming, the brothers returned to her car. Brian immediately thereafter stated that Zaparolli and Chicas "didn't deserve that." According to Moreira, Shawn responded "don't worry, you didn't do nothing, it's all on me."

Shawn testified in his own defense that he went to Zaparolli's house to "hash things out . . . to resolve it," because Zaparolli had been like a brother to Shawn and Brian. Shawn denied there was a plan to attack Zaparolli or anyone else. He recounted that Chicas was angry that the brothers came to his house at that time, told them he "was tired of this shit," and pointed a gun at Shawn. According to Shawn, he lunged at Chicas to wrestle the gun away. As they struggled, Briones jumped in to help Chicas. Shawn testified he managed to pick up the gun, then started shooting at Chicas and Briones because he did not understand why they "turned" on him. Shawn testified he then ran into the apartment to get help and to talk to Zaparolli, but Zaparolli threw a blanket on Shawn and grabbed him. As they wrestled, Shawn said he hit Zaparolli with the gun and it fired. Zaparolli fell to the ground and Shawn dropped the gun and ran out of the apartment.

The jury found each of the brothers guilty of first degree murder, attempted murder, false imprisonment, and first degree burglary. The jury also convicted Shawn of unlawful possession of a firearm. The jury further found various sentencing enhancements true, including the special allegation that both brothers committed the attempted murders with premeditation and deliberation. The court found true the brothers' prior conviction allegations and sentenced them to state prison.

### III. LEGAL STANDARD

Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

IV. DISCUSSION

A. <u>Instructional Errors</u>

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in isolation, but must be considered in the context of the instructions as a whole and the trial record.

*Id.* "Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury." *Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

*1. Natural and Probable Causes*

First, petitioner claims the trial court's instruction regarding natural and probable consequences violated his rights under the Due Process and Equal Protection Clauses. Petitioner was charged with murder and attempted murder on an aiding and abetting theory of liability. The trial court instructed the jury on both direct aiding and abetting and indirect aiding and abetting, wherein liability flows from aiding and abetting a target crime—in this case, assault with a firearm—that reasonably, naturally, and foreseeably results in the charged crime. Petitioner argues that this instruction violates the state law merger doctrine as articulated in *People v. Chun*, 45 Cal. 4th 1172, 1200 (2009), by allowing the jury to find petitioner guilty of first degree murder without proof of malice aforethought.

The California Court of Appeal rejected this argument, finding *Chun* inapplicable. As the state court explained, *Chun* was a felony-murder case in which the trial court instructed the jury on second degree felony murder either directly or indirectly as an aider and abetter based on shooting at an occupied motor vehicle. The California Supreme Court concluded this instruction was incorrect: "When the underlying felony is assaultive in nature . . . we now conclude that the felony merges with the homicide and cannot be the basis of a felony-murder instruction." *Chun*, 45 Cal. 4th at 1200. *Chun* did not address the application of the natural and probable consequences doctrine, which "operates independently of the second degree felony-murder rule." *People v. Karapetyan*, 140 Cal. App. 4th 1172, 1178 (2006). Numerous California courts, before and after *Chun*, have affirmed murder convictions predicated on aiding and abetting an assault with a deadly weapon that resulted in death. *See, e.g., Karapetyan*, 140 Cal. App. 4th at 1178; *People v. Francisco*, 22 Cal. App. 4th 1180, 1189–90 (1994); *People v. Ayala*, 181 Cal. App. 4th 1440, 1450 (2010). As such, the California Court of Appeal concluded, there was no error here in the trial court's instruction on natural and probable consequences.

Due process is violated when an instruction to the jury lightens the prosecution's burden of proving all requisite elements of the crime charged. *Francis v. Franklin*, 471 U.S. 307, 326 (1985); *Carella v. California*, 491 U.S. 263, 266 (1989). As relevant here, the California courts have concluded as a matter of state law that the statutory element of malice aforethought may be satisfied where the prosecution proves intent to aid and abet a crime of which murder may be a natural and probable consequence. Petitioner does not point to any contrary state or federal authority.

Petitioner further argues that California law violates the Equal Protection Clause by allowing an individual who aids and abets an assault with a deadly weapon to be liable for murder if murder is the natural and probable consequence of the commission of that crime, while the direct perpetrator of assault with a deadly weapon cannot be held liable for murder unless he or she possesses either an actual intent to kill or a conscious disregard for life. The Equal Protection Clause of the Fourteenth Amendment prohibits the law from according different treatment to persons similarly situated unless that classification is "reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Eisenstadt v. Baird*, 405 U.S. 438, 447 (1972) (internal quotations omitted). Other than a general citation to *Eisenstadt*, petitioner does not offer any support for the proposition that an aider and abetter in assault with a deadly weapon is similarly situated to the direct perpetrator of assault with a deadly weapon, much less that any difference in their treatment on this issue is irrational. Because petitioner does not provide any authority to suggest there was a violation of petitioner's right to equal protection, the state court's decision cannot be an unreasonable application of clearly established federal law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006). Accordingly, this claim is denied.

*2. "Equally Guilty"*

Second, petitioner claims the trial court erred in instructing the jury that all principals are equally guilty under a theory of aiding and abetting liability. The trial court instructed the jury in the language of CALJIC No. 3.00 as follows:

> Persons who are involved in committing a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include:
>
> 1. Those who directly and actively commit the act constituting the crime, or
>
> 2. Those who aid and abet the commission of the crime.

According to petitioner, this instruction allowed the jury to impute Shawn's mens rea to petitioner and convict him of a higher degree of homicide than if the jury has been required to rest its verdict solely on petitioner's own mens rea. Petitioner did not raise this issue on direct appeal, an omission for which petitioner now claims ineffective assistance of appellate council.

Petitioner relies on *People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001), which held: "[W]hen guilt does not depend on the natural and probable consequences doctrine, . . . the aider and abettor must know and share the murderous intent of the actual perpetrator." *Id.* The California Supreme Court thus expressly exempted cases like this, in which the jury was instructed upon the natural and probable consequences theory of liability, from the rule expressed in *McCoy*. Nor was any error in this instruction prejudicial in light of the overwhelming evidence to support the jury's conclusion that first degree murder was the natural and probable consequence of petitioner's actions that evening, including testimony that he accompanied his armed brother to the victims' apartment, accosted the victims in the middle of the night, and shouted "shoot him, shoot him, finish him off."

Petitioner presented his claim of ineffective assistance of appellate counsel to the California Supreme Court in a petition for writ of habeas corpus. The California Supreme Court summarily denied his claim. This Court must, therefore, determine whether the California Supreme Court could reasonably have denied petitioner's claim on any basis. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1402 (2011).

A claim of ineffective assistance of appellate counsel is subject to the same standards as a claim of ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012). In order to establish that counsel was ineffective, petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that there is a

reasonable probability the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88; *id.* at 695–96. Under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Thus, federal habeas review of a state court's denial of an ineffective assistance claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Because petitioner's underlying instructional claim is not viable, as explained above, appellate counsel cannot have rendered ineffective assistance by failing to raise this claim on direct appeal. Nor can petitioner show a reasonable possibility that but for appellate counsel's actions, the outcome of the proceeding would have been different. Accordingly, petitioner's claim is denied because he has failed to show that there was "no reasonable basis for the state court to deny relief." *Richter*, 131 S.Ct. at 784.

### 3. Failure To Instruct On Implied Malice

Third, petitioner claims the trial court erred in failing to instruct *sua sponte* on second degree implied-malice murder as the evidence presented at trial was sufficient to support a finding of the lesser-included offense. The California Court of Appeal found that there was no evidence to support such an instruction and that any error in failing to give it was harmless.

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *See Walker v. Endell*, 850 F.2d 470, 475 (9th Cir. 1987) (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "especially heavy" burden. *Henderson*, 431 U.S. at 155. The significance of the omission must be determined by reference to the instructions that were given. *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (quoting *Henderson*, 431 U.S. at 156).

Petitioner concedes the Supreme Court has not recognized a constitutional right to an instruction on a lesser-included offense. Instead, he argues this instructional omission infringed upon his right to a meaningful opportunity to present a defense. However, the decisions upon which petitioner relies, including *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) and *People v. Cash*, 28 Cal.

1  4th 703, 727 (2002), concern situations in which a defendant was precluded from advancing
2  evidence in support of their defense—an issue not presented here.  Because neither *Crane* nor *Cash*
3  constitute established Supreme Court jurisprudence to which the California Court of Appeal failed
4  to adhere, petitioner has not met his burden in this claim.

5        Petitioner's argument is also unpersuasive because it does not meet the "especially high
6  burden" of showing that the trial court's decision not to instruct on lesser-culpability was more than
7  harmless.  *See Villafuerte v. Stewart,* 111 F.3d 616, 624 (9th Cir. 1997).  The record contains ample
8  evidence supporting petitioner's conviction for first degree murder, including testimony that he
9  travelled to the victims' apartment in the middle of the night to harm Zaparolli, barred Lopez's exit
10 from the apartment, verbally encouraged his brother to kill Zaparolli, and then fled with his brother.
11 Thus, it is unlikely that the absence of an instruction on implied-malice murder caused prejudice to
12 petitioner, let alone had a "substantial and injurious effect or influence in determining the jury's
13 verdict."  *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993).  Accordingly, the claim is denied.

14 B.  <u>Prosecutorial Misconduct</u>

15       Petitioner next argues the prosecutor improperly referenced gang involvement during his
16 opening statement and thereby undermined petitioner's right to a fundamentally fair trial.
17 Introduction of gang evidence creates a substantial danger of undue prejudice because the jury might
18 improperly infer that a defendant has a criminal disposition based on the defendant's involvement in
19 a gang.  *People v. Cardenas*, 31 Cal. 3d 897, 904–05 (1982).   The prosecutor's opening statement
20 is, of course, not evidence, and habeas relief on the basis thereof is warranted only if the
21 prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a
22 denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

23       Before trial, the prosecution moved to admit evidence that appellants and their victims were
24 members of the same gang.  The court deferred its decision on admissibility until Zaparolli or
25 another witness testified and made "gang membership relevant."  The court excluded "other
26 evidence of any other type of gang activity or membership either by the defendant or any witness"

absent a further foundational hearing held outside the presence of the jury.  During opening statements, the prosecutor made the following remarks:

> Good morning to everyone.  They didn't execute the person they intended. You see, the target in the morning of January 31st, 2005, was a person by the name of Eduardo Zaparolli.  Instead, they killed Gregorio Chicas on the way to get Mr. Zaparolli.
>
> At that time in January, Mr. Zaparolli was living with Mr. Chicas . . . in an apartment . . . in South San Francisco . . . .  With them in the apartment were their two girlfriends. Eduardo Zaparolli's girlfriend, Nelia Lopez, Gregory Chicas's girlfriend was Jeanette Briones . . . .  They are all living together in this apartment. They are all working and they all knew each other or somehow were involved with the local gang called the Lomitas Park Locos, it's a Sureño gang.
>
> Mr. Zaparolli and Mr. Chicas had been active, Mr. Chicas may have been getting a little old for it, Mr. Zaparolli not so much.  So that night in January on the 31st, the early morning hours, a couple of things brought the Hedlin brothers to that apartment.
>
> You see not only did the four people inside the apartment know each other, all four of those people knew the Hedlin brothers and knew them quite well.  Had met them, had been out with them, been in the streets, been in their homes, been in their family homes.  The Hedlins had been in that apartment before.

Immediately after the prosecutor concluded his opening statement, defense counsel moved for a mistrial.  The trial court denied this motion, but provided a limiting instruction to the jury, reminding them that opening statements were not evidence and that the jury must base its verdict on evidence.  According to petitioner, this admonishment did not prevent the jury from assuming the worst based on his involvement with the Sureños gang and as a result undermined his right to a fundamentally fair trial.

Juries are presumed to follow a court's limiting instructions with respect to the purposes for which evidence is admitted. *Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997).  This presumption is rebutted only by extreme circumstances in which the instructions given will not be sufficient to overcome the prejudice from improperly admitted evidence. *See, e.g., Thomas v. Hubbard*, 273 F.3d 1164, 1173 (9th Cir. 2001) (triple hearsay statement offered by law enforcement officer establishing motive and access to weapons was the type of statement that jurors would be

unable to consider for limited purposes only, notwithstanding proper instruction).  Petitioner does not provide any authority to support his argument that a prosecutor's brief reference to gang involvement is sufficient to constitute such an extreme circumstance.  Without any showing by petitioner that the California Court of Appeal ruled counter to clearly established Supreme Court jurisprudence or that the error violated a federal constitutional right, this claim must be denied.

C.  <u>Denial of Motion to Sever</u>

Finally, petitioner claims he suffered undue prejudice by being tried alongside his brother, Shawn, because their defenses were antagonistic and because Shawn had visible gang-related tattoos that petitioner claims made him look guilty by association.  The California Court of Appeal identified "several problems with this argument."  The court noted that the trial court instructed the jury "that it must consider separately the evidence against each defendant and reach a verdict as to each based solely upon the evidence admitted against him."  In addition, the evidence against petitioner was strong, showing he took an active role in the commission of the crimes.  As that court concluded, "this is not a situation in which a marginally involved defendant might have suffered prejudice from joinder with a codefendant who participated much more actively."

The Court of Appeal also rejected petitioner's argument that his defense was incompatible with Shawn's defense.  Shawn testified that he went to Zaparolli's apartment to broker resolution of a dispute between petitioner and Zaparolli and that he ended up shooting and killing Zaparolli, with Zaparolli's own gun, out of self-defense.   Shawn also testified that petitioner was not with him when he entered the apartment or shot Chicas and Briones, and further that petitioner did not come into Zaparolli's bedroom.  Petitioner's defense centered on the brothers' exchange in Moreira's car after the incident, in which petitioner said Chicas "didn't deserve that," to which Shawn replied, "don't worry you didn't do nothing, it's all on me."  Petitioner also claimed he was too drunk to have aided and abetted in the crimes.  The Court of Appeal concluded the two defenses were "not so irreconcilable" "that only one could be guilty."  Accordingly, it held that the court did not abuse its discretion by denying Brian's severance motions.

"[T]here is no clearly established federal law requiring severance of criminal trials in state court even when the defendants assert mutually antagonistic defenses . . . ." *Runningeagle v. Ryan*, 686 F.3d 758, 777 (9th Cir. 2012). Petitioner does not provide any authority suggesting that joinder of a defendant with a co-defendant whose defense is less plausible warrants habeas relief or violates his right to due process. To the contrary, joinder appears appropriate here. Brian and Shawn were charged with crimes arising out of the same incident involving actions that they engaged in together. Petitioner does not argue that the jury was provided with evidence against Shawn that was inadmissible or highly prejudicial against petitioner, and furthermore, the jury was instructed to compartmentalize the evidence against each co-defendant. In sum, petitioner does not show the California Court of Appeal made an unreasonable application of clearly established federal law or based its decision on an unreasonable determination of the facts. On that basis, the claim must be denied.

## V. CONCLUSION

For the reasons discussed above, the petition for habeas corpus is hereby denied.

IT IS SO ORDERED.

Dated: March 5, 2014

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE